UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA C.,[1] <br>     Plaintiff, <br> v. <br> FRANK BISIGNANO[2], Commissioner of Social Security, <br>     Defendant. | Case No. 24-cv-07200-DMR <br><br> **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 10, 16 |

Plaintiff Jessica C. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 10.] The Commissioner cross-moves to affirm. [Docket No. 16.] For the reasons stated below, the court grants Plaintiff's motion and denies the Commissioner's motion.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on September 7, 2021, alleging disability beginning May 10, 2021. Administrative Record ("A.R.") 186–89. An Administrative Law Judge ("ALJ") held a hearing on October 24, 2023, at which Plaintiff appeared unrepresented. AR 48–74. On December 26, 2023, the ALJ issued an unfavorable decision. AR 24–47. The Appeals Council denied review on September 11, 2024.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano, the current Commissioner of Social Security, is automatically substituted as the defendant for Carolyn Colvin, the former Commissioner of Social Security, pursuant to Federal Rule of Civil Procedure 25(d).

AR 1–6.

The ALJ determined that Plaintiff has the following severe impairments: anxiety disorder, depressive disorder, post-traumatic stress disorder, chronic tension-type headaches, and osteoarthritis of the bilateral knees. AR 29–30. The ALJ found that Plaintiff retains the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR 404.1567(b) except [she] can tolerate occasional changes in a routine work setting; can tolerate occasional changes in workstation at the worksite but no changes in the location of the worksite; cannot tolerate demanding work pressures such as high volume output, very short deadlines, or high levels of precision; can tolerate a low level of work pressure defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, production rate pace, or teamwork in completing job tasks; can tolerate occasional interaction with coworkers and supervisors (and with respect to supervisors, after initial training period) and the public.

AR 33.

Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could perform other jobs existing in the economy, including garment folder, routing clerk, and inspector and hand packager, the ALJ concluded that Plaintiff is not disabled. AR 42.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II.   ISSUES FOR REVIEW

1. Did the ALJ err in his credibility determination of Plaintiff's allegations of mental dysfunction?
2. Did the ALJ err in departing from the opinions of the consultative and state agency psychologists when formulating an RFC?
3. Is the ALJ's RFC finding inconsistent?

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097

2

1  (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *as amended* (Aug. 12, 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (cleaned up).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (cleaned up).

**IV.  DISCUSSION**

**A.  The ALJ's Credibility Determination**

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's allegations of mental dysfunction.

**1.  Legal Standard**

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Hum. Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Id.* at 972 (cleaned up); *see also Thomas v. Barnhart*, 278 F.3d 947, 958

(9th Cir. 2002) (an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. § 404.1529(b); *Smolen*, 80 F.3d at 1281–82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ found that objective medical evidence in the record established that Plaintiff has "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms[.]" AR 35; *see* AR 35–36. The ALJ next found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 35; *see* AR 36 ("[T]he evidence is not fully consistent with the intensity, persistence, and limiting effects alleged.").

As the ALJ does not cite any evidence that Plaintiff was malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting Plaintiff's testimony. "This requires the ALJ

4

1  to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). "[T]he 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). The court finds the ALJ did not do so here.

First, the ALJ found that "the extent of treatment is not fully consistent with disability" because "[t]he record . . . shows generally a conservative course of care with medication management and twice-monthly therapy." AR 36; *see id.* ("Overall, the treatment history is not fully consistent with the alleged level of limitations."). The record demonstrates that Plaintiff's treatment was not "conservative," such that this cannot be grounds for discounting Plaintiff's testimony.

"[I]n evaluating social security claims involving mental health issues, courts have found that medication prescriptions may indicate that the treatment was not conservative." *Jones v. Dudek*, No. 21-CV-01414-JLT-BAM, 2025 WL 1505151, at *6 (E.D. Cal. May 27, 2025), *report and recommendation adopted sub nom. Jones v. Bisignano*, No. 21-CV-1414 JLT BAM, 2025 WL 1663318 (E.D. Cal. June 12, 2025). "While courts have differed on what medications constituted conservative treatment, they have clarified that some prescription medications and the adjustment of those prescriptions indicated that the treatment was not conservative." *Id.* (collecting cases).

Here, evidence establishes that Plaintiff was taking several medications, and that her medical providers were adjusting her medications to better control her symptoms. AR 461 ("She has been taking 20 mg of Celexa for quite some time. This has been working until recently."); *id.* ("I discussed options with her and will increase her Celexa to 40 mg a day."); AR 463 ("Patient has been taking Celexa 20 mg for over 15 years. Her dose of Celexa was recently increased from 20 mg once daily to 40 mg about 4 weeks ago. Patient has noticed mild improvement in her depression symptoms."); AR 464 ("Patient provided a prescription for buspirone 15 mg to take once daily in the morning."); *id.* ("Patient told to continue her Celexa 45 mg once daily in the evening as

5

recommended.")[3]; AR 491 ("Patient with history of depression, anxiety, and PTSD complaints [*sic*] of worsening depression symptoms in past 3-4 weeks. Patient is feeling more sad, excess crying, lack of energy, loss of appetite, and fatigue. Patient is currently taking citalopram 40 mg and BuSpar 15 mg daily. Patient is . . . taking citalopram 40 mg for past 5 years."); AR 493 ("PHQ-9 score is 19, patient has severe depression. Adding Wellbutrin 150 mg daily in addition to citalopram 40 mg daily. Advised patient to discontinue BuSpar 15 mg daily. Patient has tried multiple medications in the past. Referring patient to psychiatrist for further evaluation and management."); AR 508 ("Patient notes that she has not noticed a difference without taking Wellbutrin. Notes she is still taking her Celexa. . . . Patient states that she felt like her celexa stopped working to fully control anxiety and is having panic attacks since December 2019 . . . . Notes that she has been experiencing generalized anxiety more in the last few years. Reports having panic attacks and night terrors. . . . Notes that she has invasive thoughts of trauma and worry . . ."); AR 510 ("Patient encouraged to continue prazosin for large benefit and encouraged she will get used to side effects of dizziness. . . . Continue Celexa 40 mg QD for depression and PTSD[;] continue prazosin 1 mg QHS for nightmares"); AR 513 ("Patient has been treated for depression but appears to meet criteria for bipolar 2 disorder. Will not stop Celexa at this time . . . . She has significant PTSD symptoms and will start patient on prazosin to help with sleep and adrenergic overload symptoms. Recommended stopping wellbutrin as it could be causing some mood instability and increased activation of PTSD symptoms.").

The record does indicate that Plaintiff experienced some improvement with medication. *See, e.g.*, AR 369 ("Plaintiff has noticed some mild improvement in her depression symptoms."); AR 508 ("Patient reports that she got great sleep and did not have nightmares with using [prazosin]."). However, this is not necessarily evidence of a lack of disability. The Ninth Circuit requires a contextualized view of improvements in functioning, given the fluctuating nature of mental health conditions:

> As we have emphasized while discussing mental health issues, it is

---

[3] It is unclear whether the reference to "Celexa 45 mg" was a typo, or whether Plaintiff's Celexa dosage was increase to 45 mg.

6

|   |   |
|---|---|
| 1 | error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. . . . Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. . . . They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. |

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citations omitted); *see Heredia v. Kijakazi*, No. 22-16653, 2023 WL 8449242, at *1 (9th Cir. Dec. 6, 2023) ("Although medication improved [Plaintiff's] condition, [s]he continued to experience persistent and often debilitating symptoms. Indeed, the longitudinal records reflect that [Plaintiff's] symptoms fluctuated over time, as is typical for an individual with mental health conditions.").

Second, the record belies the ALJ's finding that Plaintiff "is largely independent with her activities of daily living." AR 36. The ALJ cited Plaintiff's testimony that "she is able to go to the grocery store if feeling okay and can drive if necessary"; "can do laundry and make simple meals"; "talks to her mother and sister over the phone"; "was able to take her 7 year old son to basketball last year"; "goes to a small church on Sundays with her family once a week and . . . feels happy and positive there"; and "has taken up crocheting to try to relax and reads during the day[.]" AR 37. The ALJ stated that "such activities are not determinative of the ability to work" but "do help to depict the individual's capacities over a period of time, thus serving to establish a longitudinal picture of her functional status." *Id.*

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("Though inconsistent daily activities may provide a justification for rejecting symptom testimony, 'the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'") (citation omitted; ellipses in the original). "One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan*, 260 F.3d at 1050. Indeed, the

7

Ninth Circuit "ha[s] long recognized that 'many home activities are not easily transferable to what may be the more grueling environment of the workplace[.]'"  *Smith v. Saul*, 820 F. App'x 582, 585 (9th Cir. 2020) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  This is true "particularly for claimants suffering from mental illness, who may be able to 'limit[ ] environmental stressors," and thus experience 'improved functioning,' at home in a way that is impracticable at work."  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)) (second brackets in the original).

Plaintiff's testimony and the medical record indicates that Plaintiff's ability to perform daily living activities is materially more limited than the ALJ acknowledged.  For instance, Plaintiff testified that she does not do dishes, sweep, or vacuum and sometimes does not take showers.  AR 60.  She "clean[s] the toilets . . . maybe once every two months, because it gets really bad."  AR 61.  She does laundry "because [she] can just put it in, [and] forget it[.]"  AR 60; *see* AR 461 ("She is having a hard time concentrating as well.").  The ALJ also fails to explain how the fact that Plaintiff's mother comes over to help Plaintiff clean (AR 37, 60) constitutes evidence of Plaintiff's ability to work.

Similarly, the fact that Plaintiff "is able to go to the grocery store if feeling okay and can drive if necessary" (AR 36) is also not indicative of the level of Plaintiff's independence.  Plaintiff testified that "I [drive] only when my husband, after he gets off work . . . only when I'm not taking any medication, and I'm feeling okay for the day."  AR 58.  There is no evidence as to how often this occurs.  Although she likes grocery shopping, Plaintiff testified that "I only go to certain stores because . . . a lot of the stores . . . have a lot of people in them, so I like to just go with my husband for the most part, or I can DoorDash so I can get it . . . delivered to my house."  AR 61.  She also stopped taking her son to basketball because she "was not starting to feel good, because as the games started to progress a lot more people started going, so [she] had somebody else take him."  *Id.*  This testimony is consistent with her medical history.  *See* AR 508 ("She notes that she will experience heightened anxiety in public settings or when being exposed to certain smells.").

In sum, Plaintiff's limited ability "to perform household chores, . . . leave her home, shop for groceries, and visit family members does not 'in any way detract from her credibility as to her overall disability.'"  *Smith*, 820 F. App'x at 585 (quoting *Orn v. Astrue*, 495 F.3d 625, 639 (9th

8

1 Cir. 2007)).

### B. The ALJ's Departure from Psychologists' Opinions

Plaintiff argues the ALJ erred in departing from the opinion of consultative psychologist Pauline Bonilla, Psy.D., as well as the opinions of State agency psychologists Joan Joynson, Ph.D., and Lief Leaf, Ph.D., when formulating Plaintiff's RFC.

#### 1. Legal Standard

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In determining a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence" in the record, 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), and must consider all of the claimant's "medically determinable impairments," including those that are not severe. 20 C.F.R. § 404.1545(a)(2); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"For claims filed . . . on or after March 27, 2017," the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the SSA must evaluate the "persuasiveness" of all medical opinions based on several factors, including supportability, consistency, the source's relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, whether the source has examined the claimant, any specialization, and other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c).

#### 2. Analysis

##### a. Dr. Bonilla

Dr. Bonilla opined that Plaintiff's ability to maintain regular attendance in the workplace is moderately impaired, ability to complete a normal workday/workweek without interruption from a psychiatric condition is moderately impaired, and likelihood of emotionally deteriorating in a work

9

environment is moderate.[4] AR 415–16. The ALJ found that "Dr. Bonilla's opinion is generally persuasive" because her "opinions on moderate limitations and mild impairment in simple and repetitive tasks are supported by her findings noting some difficulty with calculations and the claimant's symptom reports during the consultative examination (4F)" and "are also generally consistent with the longitudinal mental status examination findings, treatment history, and activities of daily living." AR 39.

However, the ALJ's RFC does not account for these limitations. *See, e.g.*, *Mathews v. Comm'r of Soc. Sec.*, No. 23-CV-01345-HBK, 2025 WL 225094, at *7 (E.D. Cal. Jan. 17, 2025) ("[T]he Court finds the RFC limiting Plaintiff to nonpublic simple work consisting of simple routine repetitive tasks, only occasional interaction with supervisors and coworkers, and non-production line work with only occasional workplace changes, does not account for Dr. Bonilla's findings of moderate limitations in Plaintiff's ability to complete a normal workday/work week and the likelihood of emotional deterioration."); *Slover v. Kijakazi*, No. 21-CV-01089-ADA-BAM, 2023 WL 5488416, at *4 (E.D. Cal. Aug. 24, 2023), *report and recommendation adopted*, No. 21-cv-01089-ADA-BAM, 2023 WL 5956801 (E.D. Cal. Sept. 13, 2023) ("[R]ecent case law . . . tends to refute the argument that a limitation to simple, routine tasks in the RFC adequately accounts for moderate limitations in the ability to complete a normal workday and the ability to handle stress."); *Raymond v. Berryhill*, No. 17-CV-01112-SHK, 2018 WL 3691842, at *6 (C.D. Cal. Aug. 2, 2018) (restriction to unskilled work did not sufficiently account for "moderate limitations in performing routine work duties and maintaining consistent attendance in the workplace"); *Wiles v. Berryhill*, No. 16-cv-09558-GJS, 2017 WL 5186333, at *3 (C.D. Cal. Nov. 8, 2017) (limitation to "simple routine tasks with limited public contact" did not account for moderate limitations including "maintaining regular attendance and completing a normal workday without interruption"); *see also de los Santos v. Kijakazi*, No. 20-CV-00919-GSA, 2022 WL 1541464, at *6 (E.D. Cal. May 16, 2022) ("The case law in this circuit is split but tends to favor the view that a restriction to simple/routine tasks is not a catchall and does not account for limitations such as maintaining

---

[4] Drs. Bonilla, Joynson, and Leif offered additional opinions regarding Plaintiff's RFC. Because Plaintiff does not challenge them, the court does not discuss them here.

attendance.") (collecting cases). As the ALJ also failed to explain why Dr. Bonilla's limitations were not included in the RFC, this constitutes error. *See Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580 (9th Cir. 2012) ("The administrative law judge (ALJ) erred when formulating Martin's residual functional capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it."); *Phounsavath v. Comm'r of Soc. Sec.*, No. 23-CV-01436-HBK, 2025 WL 719297, at *7 (E.D. Cal. Mar. 6, 2025) ("[F]ailure to provide reasons, supported by substantial evidence, to reject those limitations, particularly as to her ability to complete a workday/work week and deal with stress and changes, or to properly incorporate those limitations into the assessed RFC, constitutes error.") (citations omitted).

### b.     Drs. Joynson and Leaf

Dr. Joynson and Dr. Leaf opined that Plaintiff could "follow simple 1-2 step instructions[.]" AR 92, 111. The ALJ found that Dr. Joynson's and Dr. Leaf's "medical findings . . . are generally persuasive to the extent they are interpreted as consistent with the residual functional capacity in this decision. Overall, the mental opinions are well explained and supported and consistent with the objective medical and other evidence in the record." AR 38–39.

The ALJ found that Plaintiff "cannot tolerate demanding work pressures such as high volume output, very short deadlines, or high levels of precision; [and] can tolerate a low level of work pressure defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, production rate pace, or teamwork in completing job tasks[.]" AR 33. This, however, does not account for Dr. Joynson's and Dr. Leaf's opinion that Plaintiff is limited to 1-2 step instructions. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) ("There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'")[5] (brackets in the

---

[5] The Department of Labor's Dictionary of Occupational Titles ("DOT") "describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels; that is, 'aspects of education (formal and informal) . . . required of the worker for satisfactory job performance.'" *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citation

11

original).  The ALJ's RFC more closely resembles the requirements of Level Two reasoning, which is less restrictive than a limitation to one- or two-step instructions.  Accordingly, the court finds that the ALJ erred with respect to Dr. Joynson's and Dr. Leaf's opinion.

### C. The ALJ's Inconsistent RFC Finding

Plaintiff argues the ALJ's RFC is "impermissibly vague and internally inconsistent" with respect to Plaintiff's capacity to interact with supervisors, co-workers and the public, as well as what was meant by "initial training period." Mot. at 13–14.  As the reasoning for these findings turns in part on the ALJ's consideration of the medical opinions and Plaintiff's credibility, any decision on these arguments is premature.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied.  The Commissioner's decision is reversed and remanded for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: December 9, 2025

Donna M. Ryu
Chief Magistrate Judge

---

omitted).  GED levels include "the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id.*

12